JOSEPH B. POINTON, JR. *v.* STATE OF INDIANA.

[No. 676S182.   Filed February 21, 1978.]

*J. Patrick Smith, Phyliss A. Benn,* of LaPorte, for appellant.

*Theodore L. Sendak,* Attorney General, *David T. O'Malia,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was convicted of second degree murder and sentenced to an indeterminate term of 15 to 25 years. The record discloses that the body of Darlene Lausman was found lying on the edge of a cornfield. She had been stabbed approximately 69 times. Investigators discovered tire marks near the body. Subsequent investigation revealed that the appellant had left a tavern with the victim on the night of the crime. The next morning the police went to the appellant's home where they discovered a 1968 Buick Electra. The tread of the tires on this car was similar in pattern to the tracks found at the scene of the crime. Appellant was arrested, was read his *Miranda* rights and was asked if he would consent to a search of his automobile. Appellant indicated that he would permit the search. The officers then read him the consent-to-search form, including a statement that appellant had a Fourth Amendment right not to have his posses-

sions searched without a warrant. Appellant then read the consent form to himself and signed it. He handed the officers the keys to his car without any mention by the police that the investigation involved a homicide, and stated, "The knife, her clothes and her purse are in the trunk." Upon finding these items appellant was arrested and charged with murder in the first degree.

At trial appellant stated that he had been working two jobs at a total of 96 hours per week and that he frequently imbibed a few beers after work. He testified that on the night in question he had been barhopping and had met the victim during that period. He left with the victim, drove to a rural area and had intercourse with the victim. She then told appellant that she wanted some money or she would tell his wife of their relationship. In the ensuing argument appellant pulled his pocket knife and attacked the victim.

Appellant first claims the trial court erred in admitting a videotaped statement obtained from him by the LaPorte police during questioning shortly after his arrest. However when the tape was offered in evidence, appellant's attorney stated that he had no objection. Thus no error was saved on this issue. *Zupp* v. *State,* (1972) 258 Ind. 625, 283 N.E.2d 540.

We observe, however, that even had the appellant objected to the admission of the tape, the objection would not have been sustainable. Appellant argues that his consent was involuntarily made in light of the "totality of circumstances" test because he was hung over and ill when the statement was made and that by reason of his military service, he had developed a habit of submission to "authoritative commands." We see no merit in either of these contentions. The police officers testified that at the time of his arrest the appellant was coherent and did not appear to be ill. There is no evidence whatsoever of police abuse or

improper action of any sort. Appellant was fully advised of his rights at all times and given every opportunity to make use of those rights.

Appellant next argues that the trial court erred in overruling his motion to suppress items seized in the search of his automobile. We need not pass upon the question as to whether the trial judge erred in admitting the evidence for the reason the appellant waived this issue by his express statement at the time the items were offered that he had no objection to their admission. The facts in this case are similar to those in *Harrison* v. *State,* (1972) 258 Ind. 359, 281 N.E.2d 98. In that case the appellant had filed a motion to suppress which had been overruled. At the trial, when the objects he had previously sought to suppress were offered in evidence, the trial judge asked if the appellant had any objections to their admission and the appellant had stated no objections. *Harrison* follows a long line of cases in Indiana which have required that even though a motion to suppress has been overruled prior to trial, when the evidence is later offered at trial no error will be preserved unless there is an objection at that time. See *Langley* v. *State,* (1971) 256 Ind. 199, 267 N.E.2d 538; *Smith* v. *State,* (1971) 256 Ind. 603, 271 N.E.2d 133; *Thomas* v. *State,* (1971) 256 Ind. 309, 268 N.E.2d 609. There is a very sound and practical reason to preserve this proposition of law. During a hearing on a motion to suppress, the State merely represents to the judge the manner in which it will present evidence later at the trial. It is upon the State's representation as to what will be presented and how it will be presented that the judge must make his ruling on the motion to suppress. If, in fact, at the trial the evidence does not turn out to be as represented by the State, or if the State fails to present the evidence in proper manner and there is no objection made by defense counsel, no error has been made by the trial judge in conducting the case. If the parties wish to preserve error in

such an instance, they are required to make a proper objection at the proper time.

In two recent cases—*Lockridge* v. *State,* (1975) 263 Ind. 678, 338 N.E.2d 275 and *Zion* v. *State,* (1977) 266 Ind. 563, 365 N.E.2d 766—statements have been made indicating that if a motion to suppress had been overruled prior to trial it was unnecessary for counsel later during the trial to object when the questioned evidence is offered. To follow such a rule of law and overrule the existing line of authority in this State, would permit a situation to arise where a trial judge could make a proper ruling on a motion to suppress and later, when evidence was offered without objection, the trial court would be subject to reversal by a process of tacking whereby the unobjected to error at trial would be related back to a proper ruling by the judge in denying a motion to suppress. For that reason, the language in *Lockridge* and *Zion* is disapproved and the line of authority referred to in *Harrison* is reaffirmed.

Appellant's next allegation of error is that the police officers should not have been permitted to testify as to appellant's statement that the knife, her clothes and purse were in the trunk of his car. Appellant argues that this statement was a product of an involuntary waiver or consent to an illegal search and that it should have been excluded as fruits of a poison tree. At trial appellant made no objection to this testimony; therefore any error in its admission must be deemed waived. *Zupp* v. *State,* (1972) 258 Ind. 625, 283 N.E.2d 540.

Appellant's next contention is that his defense was prejudiced by the failure of the trial court to allow certain testimony by lay witnesses relating to their opinions as to his character, sanity and instances of prior conduct. The testimony in question was as follows:

DIRECT EXAMINATION OF EDWARD HAMILTON

"Q. Do you know the general reputation of Joseph Pointon

for honesty and truthfulness in the place where he worked?

"A. Yes.

"Q. And what is that reputation?

"A. It is a good reputation.

"Q. And when you say a 'good reputation,' just exactly what do you mean?

"A. You indicated truthfulness, and I do not know of an occasion when he said anything that was untruthful."

The court sustained the State's objection to this answer and told the jurors to disregard it.

DIRECT EXAMINATION OF LEE CAMPBELL

"Q. . . . Do you have an opinion as to his reputation for peace and quiet and truthfulness?

"A. I'd say it would be very good.

"Q. Did there come a time when you learned that Mr. Pointon was arrested for the crime for which he is on trial?

"A. Yes, there was, and I was surprised.

"MR. ROULE: Objection, your honor.

"THE COURT: Sustained.

"Q. I was going to ask you: what was your reaction when you found out?"

To this question the State objected and the objection was sustained.

The State correctly points out that answers involved were not responsive to the question. The witnesses volunteered specific information which was not admissible. It is well settled that evidence of specific acts is not admissible to prove reputation. *Hensley* v. *State*, (1971) 256 Ind. 258, 268 N.E.2d 90; *Woods* v. *State*, (1954) 233 Ind. 320, 119 N.E.2d 558.

In addition it is pointed out that no error was saved for the reason that no offer to prove was made when the trial

court sustained the State's objection to the question. *Schwartz* v. *State*, (1966) 247 Ind. 166, 214 N.E.2d 165. Both witnesses were properly allowed to testify as to the defendant's general reputation for peace, quietude and truthfulness in the community. The trial court did not err in excluding evidence of specific acts.

The trial court is in all things affirmed.

Hunter, Pivarnik and Prentice, JJ., concur; DeBruler, J., concurs in result with opinion.

### OPINION CONCURRING IN RESULT

DeBruler, J.—I agree that appellant's claim regarding the admissibility of evidence obtained through the search of his automobile is not before the Court, having been expressly waived by appellant's counsel at trial. I agree that *Harrison* v. *State*, (1972) 258 Ind. 359, 281 N.E.2d 98, supports this position. I cannot agree with the statement in the majority opinion purporting to disapprove the holdings of *Zion* v. *State*, (1977) 266 Ind. 563, 365 N.E.2d 766, and *Lockridge* v. *State*, (1975) 263 Ind. 678, 338 N.E.2d 275.

Initially I would point out that a basic rule of jurisprudence provides that courts decide only so much as is necessary to resolve the cases before them. In *Zion* it was necessary for the Court to decide whether Zion's challenge to identification testimony was preserved on appeal before we could treat the merits of that challenge. The Court held that the issue was adequately preserved by Zion's motion to suppress made the morning of trial, and that the confrontation sought to be challenged was not unnecessarily suggestive. The former holding is the logical prerequisite of the latter, and is not, therefore, "dictum" as described by the dissent in *Zion*. 365 N.E.2d at 770. In the present case, on the other hand, appellant's claim is completely disposed by the holding that he has waived the issue of the automobile search. Comment on what result would obtain if the facts of this case were

comparable to those in *Zion* is not necessary to the Court's decision, and is therefore merely dictum. The practice of including dictum inconsistent with precedent in the opinions of this Court can only lead to confusion and errors among the bar and lower courts of our State. *See e.g., Holes* v. *State,* (1977) Ind. App., 369 N.E.2d 1098, 1100.

Moreover, *Harrison* itself purports to state a rule much broader than its facts warrant. *Harrison,* like the present case, involved an explicit waiver of challenges to evidence allegedly obtained by illegal search, yet undertook to hold that in all cases, failure to object to evidence at trial precludes challenge to that evidence on appeal, notwithstanding that a motion to suppress has been made and overruled before trial. In support of this rule *Harrison* cites three 1971 cases, none of which deal with the necessity of a trial objection after the overruling of a suppression motion, and an annotation from the American Law Reports Anno., 50 A.L.R.2d 531 (1955), which simply states that some jurisdictions require further objection after denial of a motion to suppress and that some do not. 50 A.L.R.2d at 591-92.

Assuming that the merits of *Zion* were properly before the Court for reconsideration, I see no "sound and practical reason" why an issue which has been fully litigated and ruled upon on the morning of trial should not be considered on appeal because the accused omitted the empty formality of objecting later that same morning when the evidence sought to be challenged was introduced. Such a holding would make a mockery of this Court's pronouncement that "[W]e are inclined to review a case on the merits if possible. . . ." *Keel* v. *State,* (1973) 260 Ind. 333, 295 N.E.2d 612.

NOTE.—Reported at 372 N.E.2d 1159.